United States District Court
Southern District of Texas
**ENTERED**
June 26, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENTERTAINMENT MARKETING & | § | |
| MANAGEMENT, LTD., ICE EMBASSY, | § | |
| INC., HFR ENTERPRISES INC., | § | |
| and LINDA C. GOEHRS, ESQ., | § | |
| as Trustee for THE HOLLI ANN | § | |
| HARDIN TRUST NUMBER ONE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-24-1461 |
| | § | |
| HOLLI H. FONTENOT, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Entertainment Marketing & Management, Ltd.
("EMML"), Ice Embassy Inc. ("Ice"), HFR Enterprises, Inc. ("HFR"),
and Linda C. Goehrs, Esq., as Trustee for The Holli Ann Hardin
Trust Number One ("Trust") (collectively, "Plaintiffs"), bring this
action against defendant, Holli H. Fontenot, for fraud, fraud by
non-disclosure, negligent misrepresentation, unjust enrichment, and
fraudulent transfer arising from the valuation of Defendant's
interest in assets of the Trust, and Defendant's transfer of
proceeds from sale of assets belonging to the estate of her
deceased husband, Dallas Joseph Fontenot, Jr. ("Decedent").[1]
Pending before the court is Defendant's Motion for More Definite
Statement ("Defendant's Motion") (Docket Entry No. 7).   Also

---

[1]Plaintiffs' Original Petition & Application for Temproary
Restraining Order ("Plaintiffs' Original Petition"), Exhibit 2 to
Defendant's Notice of Removal, Docket Entry No. 1-3, pp. 2-22.
Page numbers for docket entries in the record refer to the
pagination inserted at the top of the page by the court's
electronic filing system, CM/ECF.

pending are Plaintiffs' Response to Defendant's Motion for More Definite Statement ("Plaintiffs' Response in Opposition")(Docket Entry No. 8), and Defendant Holli Fontenot's Reply in Support of her "Motion to Dismiss for Failure to State a Claim" ("Defendant's Reply") (Docket Entry No. 12).  For the reasons set forth below, the court construes Defendant's Motion as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and concludes that as so construed the motion should be granted and Plaintiffs' claims for fraud, fraud by non-disclosure, and fraudulent transfer should be dismissed for failure to state claims for which relief may be granted.

## I.   __Factual and Procedural Background__

**A.   Procedural Background**

Plaintiffs initiated this action on February 20, 2024, by filing Plaintiffs' Original Petition in the 434th Judicial District Court, Fort Bend County, Texas, Cause Number 24-DCV-313437, asserting claims for fraud, fraud by non-disclosure, negligent misrepresentation, unjust enrichment and fraudulent transfer. Plaintiffs seek imposition of a constructive trust, a temporary restraining order and appointment of a receiver to be followed by a temporary injunction, compensatory and exemplary damages, pre- and post-judgment interest, costs of court, attorney's fees, and other relief to which they may be entitled.[2]

---

[2]__Id.__ at 14-21.

On April 18, 2024, Defendant filed her Original Answer in state court.[3]  In pertinent part Defendant asserted a general denial stating that "Defendant denies each and every allegation in Plaintiffs' pleadings and demands strict proof thereof.  Defendant also asserts that Plaintiffs have failed to plead enough facts with required particularity and specificity to state claims to relief that are plausible on their face."[4]

On April 22, 2024, Defendant removed Plaintiffs' action to this court asserting complete diversity of the parties, and stating that because she was first served with the state court citation and petition on March 26, 2024, removal occurred within the 30-day period required by 28 U.S.C. § 1446(b).[5]

On May 1, 2024, Defendant filed the pending motion asking the court to "order Plaintiffs to file an amended complaint to satisfy the pleading standards of Fed. R. Civ. P. 9(b) and, in the alternative, dismiss Plaintiffs' fraud claims if they fail to sufficiently replead. . ."[6]

---

[3]Defendant's Original Answer, Exhibit 2 to Defendant's Notice of Removal, Docket Entry No. 1-3, pp. 26-28.

[4]Id. at 26 ¶ 1.

[5]Defendants' Notice of Removal, Docket Entry No. 1, p. 1.

[6]Docket Entry No. 7, p. 6.  See also Defendant's Reply, Docket Entry No. 12, p. 5 ("[Defendant] requests that each plaintiff be ordered bo plead with the required particularity, and if any plaintiff refuses to do so, that its claims be dismissed with prejudice.").

B.   **Factual Background**

Plaintiffs allege that on or about January 7, 2022, Defendant and non-party Dakota Fontenot, individually and in his capacity as a beneficiary of the Trust and as next friend or virtual representative of other Trust beneficiaries, entered into a Binding Mediated Settlement Agreement ("Settlement Agreement") "resolving a will contest."[7]   Plaintiffs allege that pursuant thereto

> the parties to that [Settlement] Agreement agreed that Defendant's interest in assets of the Trust would be purchased for an amount equal to 20% of the value of such assets.   The valuation of assets of [the] Trust was made by Davis/Chambers & Company, Ltd. (the "Appraiser").   Based on such valuation, the Trust, through payments by HFR, purchased said assets pursuant to the [Settlement] Agreement.[8]
>
> Plaintiffs allege that
>
> Ice is an asset of the Trust.   Pursuant to a March 31, 2022[,] evaluation by the Appraiser, the shares of such entity, which were wholly owned by the Trust was valued at $1,139,000.
>
> In calculating that value, the Appraiser determined based on accounting records of Ice that [Decedent] owed Ice the sum of $1,397,823 and that a separate entity named EMML owed Ice the sum of $420,950.   EMML's sole assets are loans to [Decedent] in the amount of $419,420.99.   For purposes of the valuation of Ice, the Appraiser assumed

---

[7]Plaintiffs' Original Petition, Exhibit 2 to Defendant's Notice of Removal, Docket Entry No. 1-3, p. 4 ¶ 9.   Although Plaintiffs' Original Petition states that "[a] true and correct copy of the Settlement Agreement is attached as Exhibit A and incorporated by reference," id. n. 1, the Agreement is not included among the documents attached to Defendant's Notice of Removal.

[8]Id. ¶ 10.   See also Id. at 8 ¶ 34 ("HFR and/or the Trust made payment to Defendant based on such valuation.").

that the above debts were fully collectable at full face value.

   In making such valuation, the Appraiser relied on the following documents provided by Defendant either directly to the Appraiser, through the then temporary administrator. . . or the preparer of Decedent and Defendant's tax filings:

   a.   Federal tax returns for Ice for 2017-2022 provided by Randy Sims, CPA of Robert R. Sims & Associates PC;

   b.   Federal tax returns of EMML for 2017-2020 provided by Mr. Sims;

   c.   Financial statements of EMML for 2021; and

   d.   Other information provided by Ice and its representatives.[9]

Plaintiffs allege that

[f]ollowing payment to Defendant of the promised sums under the [Settlement] Agreement, EMML and Ice sued Defendant, as the Executrix of the **Estate of [Decedent]** (the "Estate"), to collect on the unpaid debts owed by Decedent totaling $1,747,243.71, together with interest, costs and attorneys' fees, in Cause No. 22-DCV-294515, [EMML] v. Fontenot, in the 434th Judicial District Court, Fort Bend County, Texas.

   Defendant asserts in defense of the claim in Cause No. 22-DCV-294515 that the sums owed by Decedent to EMML and Ice are unenforceable against Decedent's Estate as barred by the statute of frauds, released by the [S]ettlement [A]greement, and/or never actual loans in the first place as said loans were never intended to be repaid. In support of such assertions, Defendant swears under oath that she has personal knowledge since 2018 that said amounts were neither loans nor subject to repayment based on her familiarity with [Decedent's] business dealings.

---

[9]Id. at 4-5 ¶¶ 11-13.

On September 11, 2023, Defendant submitted an affidavit making such averments in response to EMML and Ice's motion for final summary judgment filed in Cause No. 22-DCV-294515. . .

If true, Defendant's affidavit establishes that she knew that the information used by the Appraiser to provide the valuation of Ice was false.

Importantly, Defendant was the source of all or some of the critical accounting and financial information used by the Appraiser to make its valuation.

Even more, Defendant received through her representatives and had possession of the Appraiser's valuation of Ice, and never objected to or commented on the Appraiser's assumption for purposes of the valuation that the sum of $1,818,773 was fully collectable at full face value.

Further, Defendant received payment in full under the [Settlement] Agreement based on the Appraiser's valuation of Ice.[10]

## II. <u>The Court Construes Defendant's Motion for More Definite Statement as a Motion for Judgment on the Pleadings</u>

Defendant "moves for a more definite statement with respect to Plaintiffs' claims of fraud," arguing that these claims "are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)."[11]  Asserting that "[o]ne of the purposes of Rule 9(b) is to ensure that the allegations are specific enough to inform a defendant of the acts [of] which the plaintiff complains and to enable her to prepare an effective response and defense," Defendant argues that "Plaintiffs simply do not provide enough

---

[10]<u>Id.</u> at 5-6 ¶¶ 14-20.

[11]Defendant's Motion, Docket Entry No. 7, p. 1.

information to enable [her] to prepare a defense against Plaintiffs' fraud claims."[12]

Plaintiffs respond that "Defendant's motion must be denied because (a) the motion comes after her answer and (b) because Plaintiffs' pleading is not 'so vague or ambiguous that the party cannot reasonably prepare a response.'"[13]   Acknowledging that "Defendant's [M]otion challenges the viability of Plaintiffs' causes rather than the vagueness or ambiguity of the asserted causes,"[14] Plaintiffs argue that "[t]his [c]ourt should not require [them] to amend their complaint/petition with a more definite statement because their allegations are very specific and clear."[15] Citing Federal Rule of Civil Procedure 8(a), Plaintiffs argue that their Petition "provides fair notice of their claim and the facts alleged sufficiently show a plausible claim for relief.[16] Moreover, citing Federal Rule of Civil Procedure 9(b), Plaintiffs argue that "[t]he Court should not require [them] to amend their complaint/petition . . . because it satisfies the heightened pleading requirement for particularized pleadings."[17]

---

[12]Id. at 6.

[13]Plaintiffs' Response in Opposition, Docket Entry No. 8, p. 1 ¶ 1 (quoting Fed. R. Civ. P. 12(e)).

[14]Id. at 5 ¶ 23.

[15]Id. at 4 ¶ 18.

[16]Id. at 4-5 ¶ 19.

[17]Id. at 5 ¶ 22.

Defendant replies that her answer states in relevant part that

1.    "Plaintiffs fail to state a claim upon which relief can be granted," and [that]

2.    "Plaintiffs have failed to plead with particularity the circumstances constituting fraud or mistake, and accordingly, such claims should be repleaded or dismissed."[18]

Defendant explains that although her "motion (Doc. 7) is labeled 'Motion for More Definite Statement' it attacks only the fraud claims and only their failure to satisfy[] Rule 9(b)'s requirements.'"[19]  Asserting that "[d]istrict courts hold the duty to determine the true nature of a pleading by its substance rather than its labels,"[20] Defendant argues that

> [b]ecause the substance of [her] motion . . . seeks to dismiss the plaintiffs' fraud claims for failure to satisfy Rule 9(b)'s requirements, the label she mistakenly used ("Motion for More Definite Statement") should be disregarded; her motion is, in substance and purpose, a motion to dismiss for failure to state a claim.[21]

District courts have a duty to determine the true nature of a pleading by its substance instead of its labels.  See Armstrong v. Capshaw, Goss & Bowers, LLP, 404 F.3d 933, 936 (5th Cir. 2005) (citing Edwards v. City of Houston, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) ("[W]e have oft stated that 'the relief sought,

---

[18]Defendant's Reply, Docket Entry No. 12, pp. 1-2.

[19]Id. at 1-2.

[20]Id. at 2.

[21]Id. at 3.

-8-

that to be granted, or within the power of the Court to grant, should be determined by substance, not a label.'")).  Pursuant to this duty, a district court may construe the purpose of a motion as something different than what its title suggests.  Id.

Defendant based her motion on Federal Rule of Civil Procedure 12(e).[22]  Under Rule 12(e),

> [a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

A motion for more definite statement should be granted only when a pleading is so vague and ambiguous that a responsive pleading cannot be framed.  See Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999).  Here, Defendant responded to Plaintiffs' Original Petition by filing Defendant's Original Answer before filing the pending Motion for More Definite Statement.[23]  Because Defendant filed the Motion for More Definite Statement after she answered Plaintiffs' Petition, Defendants' Motion is untimely as a Motion for More Definite Statement.  See Fed. R. Civ. P. 12(e) ("The motion must be made before filing a responsive pleading.").

Although Defendant argues that her motion is substantively a Rule 12(b)(6) motion to dismiss for failure to state a claim, like

---

[22]Defendant's Motion, Docket Entry No. 7, p. 1.

[23]See Defendant's Original Answer, Exhibit 2 to Defendant's Notice of Removal, Docket Entry No. 1-3, pp. 26-28.

-9-

Rule 12(e) motions, Rule 12(b)(6) motions are untimely once a defendant has answered a complaint. <u>See</u> Fed. R. Civ. P. 12(b)("A motion asserting any of these defenses must be made before pleading if responsive pleading is allowed."). Once a responsive pleading has been filed, a motion to dismiss for failure to state a claim is properly construed as a motion for judgment on the pleadings under Rule 12(c). <u>See</u> <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam). Rule 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." <u>Doe v. MySpace, Inc.</u>, 528 F.3d 413, 418 (5th Cir.), <u>cert. denied</u>, 129 S. Ct. 600 (2008) (citing <u>Johnson v. Johnson</u>, 385 F.3d 503, 529 (5th Cir. 2004)).

Because Defendant's Motion is substantively a motion to dismiss Plaintiffs' fraud-based claims for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b), and is untimely under Rule 12(b)(6) but is not untimely under Rule 12(c), because Plaintiffs acknowledge that "Defendant's motion challenges the viability of Plaintiffs' causes rather than the vagueness or ambiguity of the asserted causes,"[24] and because Plaintiffs argue that their pleadings satisfy the requirements for

---

[24]Plaintiffs' Response in Opposition, Docket Entry No. 8, p. 5 ¶ 22.

pleading fraud-based claims with particularity,[25] the court construes Defendants' Motion as a Rule 12(c) motion for judgment on the pleadings.  See Jones, 188 F.3d at 324.  See also York v. Welch, No. 20-40580, 2024 WL 775179, *2 (5th Cir. February 26, 2024) (citing Jones and stating that "the district court committed no error when it treated Beaumont's untimely Rule 12(b)(6) motion as a Rule 12(c) motion").

## III. Analysis

The fraud based claims that Defendant challenges are Texas common law claims for fraud and fraud by non-disclosure,[26] and claims for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Comm. Code §§ 24.001-013.[27] Asserting that Plaintiffs' Original Petition fails to satisfy Rule 9(b)'s heightened pleading requirements for fraud, Defendant asks the court to order Plaintiffs to replead or, alternatively, to dismiss their fraud claims.[28] Plaintiffs argue that their pleadings satisfy Rule 9(b)'s pleading requirements.[29]

---

[25]Id. ¶ 23.

[26]Plaintiffs' Original Petition, Exhibit 2 to Defendant's Notice of Removal, Docket Entry No. 1-3, pp. 6-9 ¶¶ 21-31 (fraud by nondisclosure), and ¶¶ 32-40 (fraud).

[27]Id. at 11-14 ¶¶ 27-58.

[28]Defendant's Motion, Docket Entry No. 7, p. 6.  See also Defendant's Reply, Docket Entry No. 12, p. 5.

[29]Plaintiffs' Response in Opposition, Docket Entry No. 8, p. 5
(continued...)

**A.    Standard of Review**

        1.    <u>Federal Rule of Civil Procedure 12(c)</u>

        "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." <u>MySpace</u>, 528 F.3d at 418 (citing <u>Johnson</u>, 385 F.3d at 529).  A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam), <u>cert. denied sub nom.</u> <u>Cloud v. United States</u>, 122 S. Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. <u>Id.</u>  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 127 S. Ct. at 1965).  "Where a complaint pleads facts that are 'merely consistent with' a

_____

[29](...continued)
¶ 22 ("The Court should not require Plaintiffs to amend their complaint/petition with a more definite statement because it satisfies the heightened pleading requirement for particularized pleadings.").

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"   Id. (quoting Twombly, 127 S. Ct. at 1966).


   2.   Federal Rule of Civil Procedure 9(b)

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Rule 9(b)'s heightened pleading requirements apply to all fraud claims regardless of whether based on state law.  See Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338-39 (5th Cir. 2008) ("[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b).").  Pleading fraud with particularity in this circuit requires "the particulars of 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1068 (5th Cir. 1994)(quoting Tel-Phonic Services, Inc. v. TBS International, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)).  See also United States ex rel. Riley v. St. Luke's Episcopal Hospital, 355 F.3d 370, 381 (5th Cir. 2004) ("In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made

the representations misleading.")(internal citation omitted)).  "A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." <u>Southland Securities Corp. v. INSpire Insurance Solutions, Inc.</u>, 365 F.3d 353, 361 (5th Cir. 2004) (quoting <u>Shushany v. Allwaste, Inc.</u>, 992 F.2d 517, 520 (5th Cir. 1993)).

**B.   Plaintiffs' Fraud Claims Will be Dismissed**

1.   <u>Common Law Fraud</u>

Plaintiffs' Original Petition asserts claims for common law fraud based on allegations that

> 33. . . . through the documents disclosed to the Appraiser either directly or through the then temporary administrator, Defendant represented the existence of Decedent's loans to EMML and Ice in the amount of $1,818,773.  Defendant had reason to know that the representations of such loans would be relied upon by the Appraiser in making the valuation.  Specifically, at the time of the Agreement and during the valuation process, Defendant believed that such amounts were released and/or uncollectable or unenforceable and/or that Defendant would oppose any and all efforts to collect on the debts.
>
> 34.  Defendant's representation regarding the existence of the loans through the disclosed financial documentation was material because such was relied upon in the Appraiser's making of the valuation, and HFR and/or the Trust made payment to Defendant based on such valuation.
>
> 35.  In light of the above, Defendant's representations through the disclosures of documents were false statements of fact and/or a false promise of payment of the debts by Decedent's Estate to EMML and Ice.
>
> 36.  Alternatively, Defendant's conduct in disclosing documentation of the loans that Defendant contends is false amounted to a false representation.

-14-

37.   Defendant made the false representation knowing it was false . . .

38.   Defendant intended for the Appraiser and/or parties to the Agreement to rely on and had reason to expect they would act in reliance on the false representations described above in making payment to Defendant of 20% of the value of the Trust's assets.

39.   HFR and/or the Trust justifiably relied on the false representation when payment required under the Agreement was made to Defendant based on the valuation.

40.   Defendant's false representation directly and proximately caused damages in the amount of $1,818,773, together with interest, costs and attorneys' fees.[30]

Defendant argues that these allegations fail to state claims for fraud with particularity as required by Rule 9(b) because "Plaintiffs allege that 'through the documents disclosed to the Appraiser either directly or through the then temporary administrator, Defendant represented the existence of Decedent's loans to [Plaintiff EMML] and [Plaintiff Ice] in the amount of $1,818,773,'"[31] but that

Plaintiffs do not allege that any misrepresentation was made directly to them.  Plaintiffs' Petition does not contain any factual allegations demonstrating how or when Defendant made the alleged misrepresentations to each Plaintiff.  Plaintiffs also failed to demonstrate how these representations caused damages to each of them for an amount of $1,818,773.[32]

---

[30]Plaintiffs' Original Petition, Exhibit 2 to Defendant's Notice of Removal, Docket Entry No. 1-3, pp. 8-9 ¶¶ 33-40.

[31]Defendant's Motion, Docket Entry No. 7, p. 3 ¶ 10.

[32]Id. ¶ 11.

Defendant also argues that "Plaintiffs failed to demonstrate the 'who, what, where, when, and how' of the alleged fraud . . ."[33]

Plaintiffs respond that

[t]his case turns on whether Defendant and Decedent, her husband:

    a.    Maintained false accounting records reflecting non-existent debts;

    b.    Filed with the IRS tax filings failing to report the non-existent debts as income;

    c.    While knowing of the un-collectability of the debts, failed to advise the appraiser of such un-collectability despite receiving the valuations prior to payments from HFR and the Trust based on same; and

    d.    Despite knowing of the un-collectability of the debts, received and kept payment based on such valuations received by her.

The "who" is Defendant.

The "what" is false information that Defendant maintained in her financials . . . provided to the appraisers.

The "where" and "when" is the period after the [S]ettlement [A]greement until payment of sums based on valuations of debts that Defendant contends never existed in the first place.

The "how" is Defendant's maintaining of accounting and tax records containing false information regarding non-existent debts despite her knowing of the falsity of such records, and the provision of such records to the appraisers either directly or indirectly through her representatives.

The "how" is Defendant's receiving valuations identifying debts that she knew to be un-collectable or

---

[33] Id. ¶ 12.

-16-

non-existent but failing to correct the valuation's
report that the debts were considered fully collectable.

The "how" and "why" is receiving and keeping sums
from HFR and the Trust based on such erroneous valuations
when Defendant knew that the debts were erroneously
included in the valuation.[34]


     (a)  Applicable Law

To state claims for fraud under Texas common law, Plaintiffs

must allege that

(1) the defendant made a material representation that was
false; (2) the defendant knew the representation was
false or made it recklessly as a positive assertion
without any knowledge of its truth; (3) the defendant
intended to induce the plaintiff to act upon the
representation; and (4) the plaintiff actually and
justifiably relied upon the representation and suffered
injury as a result.

JP Morgan Chase Bank, N.A. v. Orca Assets G.P., 546 S.W.3d 648, 653

(Tex. 2018)(quoting Ernst & Young, L.L.P. v. Pacific Mutual Life

Insurance Co., 51 S.W.3d 573, 578 (Tex. 2001) (internal quotation

marks omitted)).  In Ernst & Young, 51 S.W.3d at 578, the Texas

Supreme Court explained that "our fraud jurisprudence has

traditionally focused not on whether a misrepresentation is

directly transmitted to a known person alleged to be in privity

with the fraudfeasor, but on whether the misrepresentation was

intended to reach a third person and induce reliance."  The court

---

[34]Plaintiffs' Response in Opposition, Docket Entry No. 8,
pp. 7-8 ¶¶ 21-27.  Some paragraphs in Plaintiffs' Response in
Opposition are misnumbered such that paragraph numbers 21-28 appear
on both pages 5-6 and 7-8.

also explained that "[t]he fourth element has two requirements: The plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable." Id.

      (b)  Application of the Law to Plaintiffs' Allegations

Taken as true, Plaintiffs' allegations fail to state a claim for fraud against Defendant by any Plaintiff because Plaintiffs do not allege that Defendant made false representations directly to any of them or that Defendant made false representations to the Appraiser with intent that any plaintiff would receive and rely on such representations to their detriment.

Plaintiffs allege that Defendant's representations to the Appraiser regarding the existence of Decedent's loans were false statements of fact and/or false promises that the Decedent's estate would repay the loans that the Decedent received from Ice and EMML,[35] because "at the time of the [Settlement] Agreement and during the valuation process, Defendant believed that such amounts were released and/or uncollectable or unenforceable and/or that Defendant would oppose any and all efforts to collect on the debts."[36] But Plaintiffs's allegations that Defendant's loans were false are negated by allegations elsewhere in Plaintiffs' Original Petition that "Decedent borrowed $1,327,822.72 from Ice, and

---

[35] Id. at 8 ¶ 35.

[36] Id. ¶ 33.

$419,420.99 from EMML," and that the existence of those loans "is established by the financial records of EMML and Ice, which were created and maintained at Decedent's direction."[37]  In other words, Plaintiffs allege that the existence of loans from EMML and Ice to the Decedent are established by Plaintiffs' own records.  Moreover, Plaintiffs do not allege that Defendant ever represented to any of them or to the Appraiser that the Decedent's loans were collectable or would be repaid by the Decedent's estate.  To the contrary, Plaintiffs allege that "[f]or purposes of the valuation of Ice the Appraiser **assumed** that the . . . [decedent's] debts were fully collectable . . ."[38]

Instead of alleging that Defendant intended for any Plaintiff to rely on the allegedly false representations to their detriment, Plaintiffs allege that "Defendant intended for the Appraiser and/or parties to the [Settlement] Agreement to rely on and had reason to expect they would act in reliance on the false representations . . . in making payment to Defendant of 20% of the value of the Trust's assets."[39]  But Plaintiffs do not allege that any plaintiff was a party to the Settlement Agreement.  To the contrary, Plaintiffs' Original Petition expressly states that "Plaintiffs . . . are not

---

[37]Id. at 16 ¶ 70.

[38]Id. at 4 ¶ 12 (emphasis added).

[39]Plaintiffs' Original Petition, Exhibit 2 to Defendant's Notice of Removal, Docket Entry No. 1-3, p. 9 ¶ 38.

parties to the [S]ettlement [A]greement."[40]  Plaintiffs allege that
the parties to the Settlement Agreement were Defendant and "Dakota
Fontenot, individually, in his capacity as a beneficiary of the .
. . Trust, and in his capacity as next friend and virtual
representative of [other beneficiaries of the Trust]."[41]  Because
Dakota Fontenot is neither a named plaintiff, nor alleged to have
entered the Settlement Agreement on behalf of any named Plaintiff,
Plaintiffs have failed to allege that Defendant intended to induce
any of the Plaintiffs to act upon Defendant's allegedly false
representations.[42]

Plaintiffs allege that based on the Appraiser's valuation of
Trust assets, "HFR and/or the Trust justifiably relied on the false
representation when payment required under the [Settlement]
Agreement was made to Defendant based on the valuation,"[43] "HFR
and/or the Trust made payment to Defendant based on [the
Appraiser's] valuation,"[44] and "Defendant's false representation
directly and proximately caused damages in the amount of

---

[40]Id. at 16 ¶ 71.

[41]Id. at 3-4 ¶ 9.

[42]Id.

[43]Id. at 9 ¶ 39

[44]Id. at 8 ¶ 34.

$1,818,773."[45]   But Plaintiffs fail to allege facts showing why HFR and/or the Trust — both non-parties to the Settlement Agreement — relied on Defendant's allegedly false representations, why HFR or the Trust's reliance on the Defendant's allegedly false representations was justifiable, why payment to Defendant based on the Appraiser's valuation was made by HFR and/or the Trust instead of by parties to the Settlement Agreement, or why Defendant's allegedly false representations directly and proximately caused damages in the amount of $1,818,773 to any Plaintiff.

Because Plaintiffs fail to allege facts capable of establishing that Defendant made allegedly false representations with intent to induce any Plaintiff to act upon the representations, or that any Plaintiff actually and justifiably relied on such representations to their detriment, the court concludes that Plaintiffs's Original Petition fails to state a claim for common law fraud under Texas law for which relief may be granted.  See JP Morgan Chase, 546 S.W.3d at 653; and Ernst & Young, 51 S.W.3d at 578.


2.   Fraud by Non-Disclosure

Plaintiffs' Original Petition asserts claims for fraud by nondisclosure based on allegations that

---

[45]Id. at 9 ¶ 40.

-21-

22.   .  .  .   Defendant concealed or failed to disclose material facts related to the collectability of Decedent's debts to EMML and Ice as relied upon for the valuation by the Appraiser, including but not limited to Defendant's belief that such amounts were released and/or uncollectable or unenforceable and/or that Defendant would oppose any and all efforts to collect on the debts.

23.   Defendant had a duty to disclose that information because the information was new, and it made Defendant's earlier disclosures regarding EMML's and Ice's assets and accounting records used for the valuation by the Appraiser false and misleading.

24.   Alternatively, Defendant had a duty to disclose the information because Defendant partially disclosed the information for the valuation by the Appraiser, which created a substantially false impression.

25.   Alternatively, Defendant had a duty to disclose the information because Defendant voluntarily disclosed some of the information for the valuation by the Appraiser.

26.   The information regarding the collectability of the debts owed to EMML and Ice was material because such constituted the majority of the assets of Ice, on which payments to Defendant were based.

27.   Defendant knew Plaintiffs and the Appraiser were ignorant of the information and did not have an equal opportunity to discover the truth based on the Appraiser's valuation received by Defendant prior to payment under the [Settlement] Agreement.

28.   Despite knowing the falsity of [the] Appraiser's assumption that debts of $1,818,773 were fully collectable at full face value, Defendant deliberately remained silent and did not disclose the information to [the] Plaintiffs or the Appraiser.

29.   By deliberately remaining silent, Defendant intended to receive payments based on the valuation without information that the assumptions by the Appraiser and records utilized by the Appraiser contained false information.

> 30.   The Trust and HFR reasonably and justifiably relied
> on Defendant's deliberate silence in making the payment
> promised to Defendant under the [Settlement] Agreement.
>
> 31.   Defendant's   deliberate   silence   directly   and
> proximately caused damages in the amount of $1,818,773,
> together with interest, costs and attorneys' fees.[46]

Defendant argues that these allegations fail to state claims for fraud by nondisclosure with particularity as required by Rule 9(b) because "[n]one of the facts in the Petition support Plaintiffs' claim that Defendant had a duty to disclose."[47] Defendant also argues that Plaintiffs failed to plead facts capable of showing that "Plaintiffs were ignorant of the information and did not have any equal opportunity to discover the truth."[48]   The court agrees.

(a)   Applicable Law

"Fraud by non-disclosure, a subcategory of fraud [under Texas law], occurs when a party has a duty to disclose certain information and fails to disclose it."  Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC, 572 S.W.3d 213, 219 (Tex. 2019) (citing Schlumberger Technology Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex. 1997)).

---

[46] Id. at 6-8 ¶¶ 22-31.

[47] Defendant's Motion, Docket Entry No. 7, p. 4 ¶ 15.

[48] Id. ¶ 16.

-23-

> To establish fraud by non-disclosure, the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury.

Id. at 219-20 (citing Bradford v. Vento, 48 S.W.3d 749, 754-55 (Tex. 2001) (holding that there must be a duty to disclose)). See also Dorsey, 540 F.3d at 341 (citing Bradford, 48 S.W.3d at 754-55, for stating the elements of a claim for common-law fraud by nondisclosure under Texas law).

> The duty to disclose may arise (1) when the parties have a confidential or fiduciary relationship, (2) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth, (3) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue, or (4) when one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak.

Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, LTD., 237 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing inter alia, Insurance Company of North America v. Morris, 981 S.W.2d 667, 674 (Tex. 1998)).

(b)  Application of the Law to Plaintiffs' Allegations

Taken as true, Plaintiffs' allegations fail to state claims for fraud by nondisclosure against Defendant by any Plaintiff. Plaintiffs  allege that Defendant had a duty to disclose that

-24-

Decedent's debts to EMML and Ice as relied upon for the valuation by the Appraiser, including but not limited to Defendant's belief that such amounts were released and/or uncollectable or unenforceable and/or that Defendant would oppose any and all efforts to collect on the debts.[49]

Plaintiffs allege that Defendant had a duty to disclose this information,[50] but fail to allege facts showing why Defendant owed a duty of disclosure to any Plaintiff.  In § III.B.1(b), above, the court has already addressed Plaintiffs' failure to allege facts capable of establishing that Defendant made any false representations directly to them or to the Appraiser with intent that either the false representations or the Appraiser's valuation of Trust assets based on Defendant's representations would be received by any Plaintiff, relied upon by any Plaintiff, or acted upon by any Plaintiff to their detriment.  Absent such allegations, Plaintiffs are unable to establish that Defendant owed any Plaintiff a duty of disclosure.  See Solutioneers, 237 S.W.3d at 385 (citing inter alia, Morris, 981 S.W.2d at 674).  Nor have Plaintiffs alleged facts capable of establishing that any of them were ignorant of the allegedly concealed information, that they lacked an equal opportunity to discover that information, or that Defendant intended for any plaintiff to act or refrain from acting based on the alleged nondisclosure.

---

[49]Plaintiffs' Original Petition, Exhibit 2 to Defendant's Notice of Removal, Docket Entry No. 1-3, pp. 6-7 ¶ 22.

[50]Id. at 7 ¶¶ 23-25.

Because Plaintiffs fail to allege facts capable of establishing that Defendant owed a duty of disclosure to any Plaintiff, that any Plaintiff was ignorant of the allegedly concealed information and lacked an equal opportunity to discover it, or that Defendant intended for any plaintiff to act or refrain from acting based on the alleged nondisclosure, the court concludes that Plaintiffs's Original Petition fails to state a claim for fraud by nondisclosure under Texas law for which relief may be granted with particularity required by Rule 9(b). See Bombardier, 572 S.W.3d at 219-20 (citing Schlumberger, 959 S.W.2d at 181).

3.  Fraudulent Transfer

Plaintiffs' Original Petition asserts claims for fraudulent transfer in violation of TUFTA based on allegations that "Defendant sold substantially all of the real property belonging to Decedent's Estate after the filing of a lawsuit (Cause No. 22-DCV-294515, [EMML] v. Fontenot, in the 434th Judicial District Court, Fort Bend County, Texas) seeking to enforce the ICE and EMML debts against Decedent's Estate."[51]   Plaintiffs allege that Defendant

> deposited the proceeds from such sale into bank accounts
> belonging to companies owned by Defendant.  Defendant
> made the above-described transfers of assets from
> Decedent's Estate during the pendency of . . . suit with

---

[51] Id. at 13 ¶ 54.

-26-

actual intent to hinder, delay, or defraud the collection
of sums owed to ICE and EMML.[52]

Plaintiffs also allege that "Defendant made the above-described
transfers without receiving a reasonably equivalent value in
exchange for the transfers, and Decedent's Estate was insolvent at
that time or . . . became insolvent as a result of the transfers,
and unable to pay the debts owed to ICE and EMML."[53]

Citing In re Northstar Offshore Group, LLC, 616 B.R. 695, 733
(Bankr. S.D. Tex. 2020), for applying Rule 9(b)'s heightened
pleading standard to claims for actual fraudulent transfer,
Defendant argues that Rule 9(b)'s heightened pleading standard
applies to Plaintiff's fraudulent transfer claims because

> while Plaintiffs cited to the statute for constructive
> fraudulent transfer, they also specifically pled that
> Defendant made the transfers "with actual intent to
> hinder, delay, or defraud the collection of sums owed,"
> which is only an element of actual fraudulent
> transfers.[54]

Defendant argues that Plaintiffs have failed to state claims for
fraudulent transfer because they have "failed to identify any of
the assets allegedly sold, when they were sold, how much they were
sold for, to which 'companies owned by Defendant' the proceeds from
the sales were transferred into, or why Defendant did not receive

---

[52]Id.

[53]Id. ¶ 55.

[54]Defendant's Motion, Docket Entry No. 7, p. 5 ¶ 19.

a reasonably equivalent value in exchange for the transfers."[55] Plaintiffs have not responded to Defendant's arguments with respect to their claims for fraudulent transfer.

    (1)  Applicable Law

    "The purpose of [T]UFTA is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach."  Nwokedi v. Unlimited Restoration Specialists, Inc., 428 S.W.3d 191, 203 (Tex. App. — Houston [1st Dist.] 2014, pet. denied).  Under TUFTA any obligation a debtor incurs "with actual intent to hinder, delay, or defraud any creditor of the debtor," Tex. Bus. & Comm. Code § 24.005(a)(1), may be voided, and a creditor may obtain "an injunction against further disposition by the debtor or a transferee, or both, or the asset transferred or of other property."  Id. at 24.008((a)(3)(A). "Thus, the elements of an actual fraudulent transfer under TUFTA are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors."  Matter of Life Partners Holdings, Inc., 926 F.3d 103, 117 (5th Cir. 2019).  As an alternative to the "actual intent" element, a TUFTA claim may be premised on constructive fraud by alleging that the debtor, without receiving reasonably equivalent

_____

[55] Id. at 6 ¶ 22.

-28-

value in exchange for the transfer, engaged in a transaction for which its remaining assets were unreasonably small or that the debtor intended to incur debts beyond its ability to pay as they came due.  Tex. Bus. & Comm. Code § 24.005(a)(2). <u>See also</u> <u>Matter of Life Partners</u>, 926 F.3d at 119-20.

The Fifth Circuit has not "addressed the question of whether an actual fraudulent transfer claim is subject to Rule 9(b)'s heightened pleading requirements."  <u>Matter of Life Partners</u>, 926 F.3d at 118.  The Fifth Circuit has, however, observed that while "the district courts in this circuit are not in unanimity on this question," <u>id.</u>, "at least three other circuits — the First, Second, and Eighth Circuits — have concluded that Rule 9(b) applies."  <u>Id.</u> (citations omitted).  Since, however, Rule 9(b) applies whenever fraud is an essential element of a claim, and since Plaintiffs allege that Defendant made the transfers "with actual intent to hinder, delay, or defraud the collection of sums owed to ICE and EMML,"[56] the court concludes that Rule 9(b)'s heightened pleading standards apply to Plaintiffs' actual fraudulent transfer claims.

(2)  <u>Application of the Law to the Plaintiffs' Allegations</u>

Taken as true, Plaintiffs' allegations fail to state TUFTA claims for fraudulent transfer against Defendant by any Plaintiff. Plaintiffs allege that during the pendency of a suit that EMML

---

[56]<u>Id.</u> at 13 ¶ 54.

filed against Defendant as Executrix of Decedent's estate seeking to collect debts that the Decedent owed to EMML and Ice, Defendant sold substantially all of the real property belonging to the estate and deposited the proceeds from those sales into bank accounts belonging to companies that she owned with actual intent to hinder, delay, or defraud Ice and EMML by preventing them from collecting debts owed to them by the estate.[57]    Plaintiffs allege that Decedent's estate was either insolvent at the time of the transfers or became insolvent as a result of the transfers, and that Defendant transferred estate assets to companies that she owned without receiving a reasonably equivalent value in exchange.[58] But Plaintiffs fail to allege facts identifying the assets sold, the proceeds received from the sales, the amounts transferred, or the companies to which the transfers were made.    Nor have Plaintiffs alleged facts capable of establishing that the Decedent's estate was insolvent at the time of the transfers, that the estate became insolvent as a result of the transfers, or that Defendant made the transfers without receiving a reasonably equivalent value in exchange.    Absent specific references to the alleged transfers or to the estate's financial condition before or after the alleged transfers, Plaintiffs offer only conclusory allegations and subjective assessments of the estate's financial condition that not

---

[57] Id.

[58] Id. ¶ 55.

only fail to state claims for fraudulent transfer with
particularity as required by Rule 9(b), but also fail to state
plausible claims for fraudulent transfer as required by Rule 8(a).
See Matter of ATP Oil & Gas Corp., 711 F. App'x 216, 223 (5th Cir.
2017) (holding that conclusory assertions about the debtor's
financial condition failed to state a TUFTA claim for which relief
could be granted).  See also Matter of Life Partners, 926 F.3d at
119 (holding that pleadings that identified the transferor, the
transferees, the amounts transferred, and the time period that the
transfers occurred  satisfied Rule 9(b)'s pleading standards).

## IV.  Conclusions and Order

For the reasons stated in § II, above, the court concludes
that Defendant's Motion for More Definite Statement is
substantively a motion to dismiss for failure to state a claim for
which relief may be granted, because Defendant's motion was filed
after Defendant answered Plaintiffs' Petition, and because
Plaintiffs argue that their pleadings satisfy Federal Rule of Civil
Procedure 9(b)'s heightened pleading requirements for fraud claims,
the court has construed Defendant's Motion as a Motion for Judgment
on the Pleadings under Federal Rule of Civil Procedure 12(c).

For the reasons stated in § III, above, the court concludes
that Plaintiffs have failed to state claims for which relief may be
granted for fraud, fraud by nondisclosure, or fraudulent transfer.

-31-

Therefore, Defendant's Motion for More Definite Statement construed
as a Motion for Judgment on the Pleadings under Federal Rule
of Civil Procedure 12(c), Docket Entry No. 7, is **GRANTED.**
Plaintiffs' claims for fraud and fraud by nondisclosure based on
Texas common law, and Plaintiffs' claims for fraudulent transfer
based on the Texas Uniform Fraudulent Transfer Act, Tex. Bus.
& Comm. Code §§ 24.001-13, are **DISMISSED WITH PREJUDICE.**[59]

> **SIGNED** at Houston, Texas, on this the 26th day of June, 2024.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[59]As the length of this Memorandum Opinion and Order indicates,
the court has expended considerable time reading the parties'
papers and performing a significant amount of independent research
to be as fully informed as possible when addressing the parties'
arguments.   While, it is not impossible that some arguments were
overlooked, the parties should assume that failure to expressly
address a particular argument in this Memorandum Opinion and Order
reflects the court's judgment that the argument lacked sufficient
merit to warrant discussion.   Accordingly, the court strongly
discourages the parties from seeking reconsideration based on
arguments they have previously raised or that they could have
raised.

-32-